UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE


Karen L. Bartlett

    v.                              Civil No. 08-cv-358-JL
                                        Opinion No. 2010 DNH 131
Mutual Pharmaceutical
Company, Inc.

### SUMMARY ORDER

Mutual has moved in limine to exclude various types of evidence from the upcoming trial.  See L.R. 16.2(b)(3).  This court will address each of its motions in turn.


### Motion #1:  Adverse event reports

Mutual seeks to exclude evidence of adverse drug event reports received by the Food & Drug Administration ("FDA") or the World Health Organization ("WHO"), arguing that such reports are hearsay and that Bartlett has not demonstrated that the underlying cases involved sufficiently similar circumstances. This motion is granted in part.  The reports are indeed hearsay "if offered to prove the truth of the matter[s] asserted" in them, i.e., that Sulindac caused SJS/TEN in a particular case. Fed. R. Evid. 801(c).  Bartlett has not argued that they fall within any hearsay exception.  Thus, the reports may not be offered for that purpose.

The reports are not hearsay, though, if offered to prove that the FDA was on notice of Sulindac's safety risks, or that Mutual should have been on notice of such risks.[1]  See Kelley v. Airborne Freight Corp., 140 F.3d 335, 346 (1st Cir. 1998); Golod v. Hoffman La Roche, 964 F. Supp. 841, 855 (S.D.N.Y. 1997) (adverse event "reports are not hearsay, because they are offered not as proof of the fact that [the drug] caused the reported blindness, but as evidence that [the defendant] was on notice of potentially serious optical side effects").  If Bartlett seeks to admit them for that purpose, Mutual may request a limiting instruction and/or seek other limits on their use (e.g., to require redactions, or allow only summaries rather than the reports themselves) to prevent any unfair prejudice.  See Fed. R. Evid. 403.

This court disagrees, however, with Mutual's argument that the underlying cases need to be similar to this case "in all respects" for the reports to be admitted on the issue of notice. They need only be "substantially similar."  Moulton v. Rival Co., 116 F.3d 22, 26-27 (1st Cir. 1997); McKinnon v. Skil Corp., 638

---

[1]This court recently ordered the parties to brief the issue of whether Bartlett has trialworthy claims for negligence or enhanced compensatory damages and, if not, whether evidence of Mutual's alleged fault is admissible to support her claim for strict liability (see doc. 281).  The court expresses no opinion on those issues here, other than to note that any pre-trial evidentiary rulings that reject challenges to evidence of Mutual's fault may need to be revisited after such briefing.

F.2d 270, 277 (1st Cir. 1981).  Here, each of the reports concerns a patient who allegedly suffered SJS/TEN after taking Sulindac.  That is a sufficient similarity to support their admission, at least for notice purposes.  See Golod, 964 F. Supp. at 855.

Finally, Bartlett's experts may testify based on the reports if, and to the extent that, they are "reasonably relied upon by experts in the particular field," notwithstanding any hearsay problems.  Fed. R. Evid. 703; see also In re Fosamax Prods. Liab. Litig., 645 F. Supp. 2d 164, 200 (S.D.N.Y. 2009) (allowing experts to testify based on such reports in another case involving a rare disease, but noting a split of authority on that issue).  The reports themselves "need not be admissible in order for the [expert] opinion or inference to be admitted."  Fed. R. Evid. 703.  That does not mean, however, that Bartlett's experts may recite the contents of the reports or share copies with the jury.  Id.


**Motion #2: Other litigation**

Mutual seeks to preclude references to other litigation involving Sulindac or other NSAIDs.  Since Bartlett has no objection to this motion, it is granted.  See Fed. R. Evid. 401-403; Bartlett v. Mut. Pharm. Co., 2010 DNH 125, 9 (granting a

3

similar motion in limine filed by Bartlett).  This ruling does not restrict either party from cross-examining each other's expert witnesses about their involvement in other cases, even if those cases involved Sulindac or other NSAIDs.

## Motion #3:  FDA's resources

Mutual seeks to exclude evidence of the FDA's alleged lack of resources and inability to monitor the safety of all drugs, arguing that such evidence has no probative value and is unfairly prejudicial.  This motion is denied.  Such evidence is relevant in determining how much weight, if any, should be given to the FDA's approval of Sulindac as safe and effective for its directed uses, and the FDA's approval of the drug's warning.  See Fed. R. Evid. 401, 402.  As a counterpoint to Mutual's evidence of those FDA approvals, the evidence is not unfairly prejudicial.  See Fed. R. Evid. 403.  Bartlett is reminded, however, that her use of such evidence may "open the door" to contrary evidence from Mutual about the FDA's resources and abilities.  See Bartlett, 2010 DNH 125, at 10.

## Motion #4:  Subsequent label changes

Mutual seeks to exclude evidence of certain changes to Sulindac's warning label that occurred after Bartlett's

4

prescription, arguing that they are inadmissible as "subsequent remedial measures," see Fed. R. Evid. 407, and are unfairly prejudicial, see Fed. R. Evid. 403.  The label changes resulted from a citizen's petition filed with the FDA by a group of doctors (including two of Bartlett's experts) in 2005.  Although the petition related specifically to the drug ibuprofen and its risk of SJS/TEN, the FDA responded by requiring the manufacturers of all NSAIDs, including Sulindac, to insert a specific SJS/TEN warning into their drug labels.  See Bartlett v. Mut. Pharm. Co., 2010 DNH 112, 15 n.6 (quoting the warning).

Many courts have deemed evidence of post-prescription label changes inadmissible as "subsequent remedial measures" under Rule 407.  See, e.g., Stahl v. Novartis Pharms. Corp., 283 F.3d 254, 270-72 (5th Cir. 2002); DeLuryea v. Winthrop Labs., 697 F.2d 227, 229 (8th Cir. 1983); Werner v. Upjohn Co., 628 F.2d 848, 853 (4th Cir. 1980).  This case is different, though, because the changes were mandated by the FDA for an entire class of drugs, not implemented by Mutual as a remedial measure specific to Sulindac. "Rule 407 applies only to subsequent remedial measures taken voluntarily by the defendant," Raymond v. Raymond Corp., 938 F.2d 1518, 1524 (1st Cir. 1991) (emphasis in original), and thus does not apply to broader government-mandated measures of this sort. See, e.g., 2 Weinstein's Federal Evidence § 801.30[4], at 801-55 (2d ed. 1997) (citing Sabel v. Mead Johnson & Co., 737 F. Supp.

135, 141 (D. Mass. 1990), which admitted FDA letter recommending
that manufacturer strengthen its drug label).

Since Rule 407 presents no barrier to admission of the post-
prescription label changes, this court "must consider under Rule
403 whether [their] probative value is outweighed by the danger
of unfair prejudice and confusion." Lindsay v. Ortho Pharm.
Corp., 637 F.2d 87, 94 (2d Cir. 1980); see also Raymond, 938 F.2d
at 1524.  Of course, such changes can be highly probative of the
label's adequacy, in that they may indicate an inaccuracy or
omission in the prior label.  But the danger is that they could
be valued too highly by the jury, i.e., viewed as an implicit
admission of inadequacy by the manufacturer.  Some courts have
excluded evidence of label changes on that basis.  See, e.g.,
Gray v. Hoffman-La Roche, Inc., 82 Fed. Appx. 639, 646 (10th Cir.
2003); Lindsay, 637 F.2d at 94.

Again, however, this case is different.  There is little
risk here that the jury will view the label changes as an
admission of inadequacy by Mutual, because they were mandated by
the FDA and applied to all NSAIDs, not just Sulindac.  Indeed,
the changes may actually support Mutual's case as much as or more
than Bartlett's, because the use of a class-wide warning "implies
that all NSAIDs have a similar risk of SJS/TEN," Bartlett, 2010
DNH 112, at 15 n.6, and thus undermines Bartlett's claim that
Sulindac has or may have a greater risk than other NSAIDs and

6

that its warning should have said so.  Moreover, Mutual has repeatedly argued that the FDA essentially "adopted" the language from Sulindac's label, since it was the strongest of any NSAID's, and that the changes did not "materially improve" the prior warning (<u>see</u>, <u>e.g.</u>, doc. 149, at 26).

Given that Mutual intends to use the FDA's approval of Sulindac's label as evidence of the label's adequacy (which is an element of Mutual's "comment k" defense, <u>see</u> <u>Bartlett</u>, 2010 DNH 112, at 25-26 (discussing <u>Restatement (Second) of Torts</u> § 402A, cmt. k (1965))), this court does not consider it unfairly prejudicial for Bartlett to counter with evidence that the FDA changed that label less than two years later, especially to the extent that the FDA relied on information available to Mutual at the time of Bartlett's prescription.  One might even argue that it would be unfairly prejudicial to <u>prevent</u> Bartlett from responding in kind.  In any event, "Rule 403 tilts the balance in favor of admission" in close cases.  <u>United States v. Whitney</u>, 524 F.3d 134, 141 (1st Cir. 2008).  Mutual's request to exclude evidence of the label changes is therefore denied.[2]

---

[2]Either party may, however, request a limiting instruction that neither the FDA's approval of the label, nor the fact that it required changes, is controlling on the issue of the label's adequacy.

**Motion #5:  Surveillance firm**

Mutual seeks to exclude evidence that after Bartlett's injuries it retained an outside firm to survey the medical literature for safety information relating to Sulindac and other drugs it manufactures.  Mutual argues that such evidence is inadmissible as a subsequent remedial measure.  <u>See</u> Fed. R. Evid. 407.  Bartlett argues, in response, that such evidence is relevant to whether the outside firm should have been retained earlier.  But Rule 407 makes clear that subsequent remedial measures are "not admissible to prove negligence [or] culpable conduct."  Mutual's motion is therefore granted.


**Motion #6:  Citizen's petition by Bartlett's experts**

Mutual seeks to exclude evidence of the citizen's petition, discussed above in connection with motion #4, that resulted in post-prescription changes to Sulindac's label.  This motion is denied, for the same reasons discussed above.  One additional consideration here is that the petition's authors included two of Bartlett's experts.  It is not entirely clear whether that authorship will operate to the benefit or detriment of either party.  Nevertheless, Mutual may request a limiting instruction and/or seek other limits on the use of such evidence (e.g.,

8

redaction) to prevent any unfair prejudice.[3]  See Fed. R. Evid.
403.


**Motion #7:  Citizen's petition by Mutual**

Mutual seeks to preclude any reference to a citizen's
petition that it filed with the FDA in 2008 requesting permission
to manufacture and sell Sulindac in capsule form (as opposed to
tablets).  This motion is granted in part.  The citizen's
petition has no relevance as substantive evidence, because it
does not involve the type of safety issues raised by Bartlett's
defective design claims or the type of labeling issues raised by
Mutual's "comment k" defense.  See Fed. R. Evid. 401, 402.  The
petition may, however, have some bearing on the credibility of
former FDA official and defense witness Robert Pollack, who
signed it on Mutual's behalf.  See Fed. R. Evid. 608(b).


**Motion #8:  Manufacturing and testing**

Mutual seeks to preclude any reference to its manufacturing
processes for Sulindac, the possibility of an alternative
formulation of the drug, or product testing.  This motion is
granted.  Bartlett concedes that she is no longer claiming that

---

[3]This court expresses no opinion on the hearsay arguments
raised in Mutual's reply brief.  Mutual may raise those
objections at trial.

Sulindac had a manufacturing defect, or that Mutual could or should have formulated the drug differently, so evidence on those points is no longer relevant.  <u>See</u> Fed. R. Evid. 401, 402. Mutual may, however, present evidence that Sulindac could <u>not</u> have been formulated differently, which is an element that it must prove to establish its "comment k" defense.  <u>See</u> <u>Bartlett</u>, 2010 DNH 122, at 25-26.

As for product testing, Bartlett claims she is still pursuing a failure-to-test theory.  But the basis for that theory is unclear.  In her objection, Bartlett argues that Mutual "had an obligation to take action to ensure it was selling a safe drug" and that "skin patch testing or lymphocyte toxicity array tests to pre-challenge blood before anyone got this NSAID would have likely saved [her] eyes."  But this court cannot find any support for that theory in her expert reports (or, for that matter, in the law).[4]  Without expert testimony, references to such testing would only confuse or mislead the jury.  <u>See</u> Fed. R. Evid. 403.

---

[4]This is essentially just another "non-label" failure-to-warn theory, in that it suggests Mutual should have warned doctors and patients of the need for such testing.  <u>See</u> <u>Bartlett</u>, 2010 DNH 112, at 21-22 (granting summary judgment on Bartlett's failure-to-warn claims and rejecting as speculative the similar theory "that Mutual should have launched an educational campaign to promote early monitoring of Sulindac's side effects").

**Motions #9:  Unilateral label changes**

Mutual seeks to preclude any suggestion that it had the right to strengthen Sulindac's safety warning unilaterally, which it argues is contrary to federal law.  But this court has already ruled, as a matter of federal law, that Mutual did have that right.  See Bartlett, 659 F. Supp. 2d at 279; Bartlett, 2010 DNH 112, at 38-41.  The motion is therefore denied as moot.  The court reiterates, however, that neither party may offer testimony on legal issues that fall within the province of the court, including this one.  See Bartlett, 2010 DNH 123, at 5-6, 29-30.

**Motion #10:  Hypothetical FDA action**

Mutual seeks to preclude any assertion that the FDA would have changed Sulindac's label or withdrawn it from the market if Mutual had given it certain information.  This motion is granted, as any such assertion would be speculative and unfairly prejudicial for the reasons explained in this court's prior rulings.  See Bartlett, 2010 DNH 123, at 6-7; docs. no. 271, 273; see also Fed. R. Evid. 602 (permissible basis for fact witness testimony), 701 (permissible basis for lay opinion testimony), and 703 (permissible basis for expert testimony).

Indeed, such an assertion appears to be contrary to what has actually happened.  Sulindac remains on the market today with

11

essentially the same label (except for the changes discussed in connection with motion #4, supra), even though the FDA has long been aware of the adverse event data and medical literature upon which Bartlett relies.  See, e.g., Letter from Dr. Steven Galson, Director of FDA's Center for Drug Evaluation & Research, to Bartlett's expert Dr. Roger Salisbury (June 22, 2006), doc. no. 215-4, at 2.

**Motions #11 and 23:  Legal testimony**

Mutual seeks to preclude Bartlett from offering any testimony that interprets the law or expresses an opinion about whether Mutual violated it.  This motion is granted, for reasons explained in this court's ruling on the parties' expert motions. See Bartlett, 2010 DNH 123, at 29-30.

**Motions #12 to #15:  Adequacy of label**

Mutual seeks to preclude any testimony about the adequacy of Sulindac's warning label because there is no evidence that Bartlett or her prescribing doctor read or relied upon it.  While that is true, and indeed is why this court granted summary judgment on Bartlett's failure-to-warn claims, see Bartlett, 2010 DNH 112, 13-18, the adequacy of the label remains relevant to this case in at least one respect, which is that Mutual's

12

"comment k" defense depends on it.[5]  See id. at 26.  Mutual has

not disclaimed that defense; rather, it seems to have filed this

motion on the erroneous assumption that the lack of reliance on

Sulindac's label would defeat all of Bartlett's claims, rendering

any defenses moot.  Since that is not so, and since the label's

adequacy remains at issue, Mutual's request to exclude all

testimony on that subject is denied.

　　　Mutual also seeks to preclude any suggestion that the

Sulindac label failed to mention SJS/TEN in its "Warnings"

section, despite mentioning it in the "Adverse Reactions"

section.  See id. at 4-5.  Mutual argues that such a suggestion

conflicts with the well-established rule that a drug label must

be "read as a whole" to determine its adequacy.  Id. at 10

(quoting Guevara v. Dorsey Labs., 845 F.2d 364, 366 (1st Cir.

1988)).  This request, too, is denied.  As explained in this

court's summary judgment ruling, a warning can be inadequate not

---

　　　[5]Whether the label is also relevant to Bartlett's prima
facie case is less clear.  The New Hampshire Supreme Court has
listed "the presence and efficacy of a warning" as one of "many
possible factors" that "a jury must evaluate" in determining
whether a product is unreasonably dangerous.  See Vautour v. Body
Masters Sports Indus., Inc., 147 N.H. 150, 154 (2001).  But it
has also said that "design defect and failure to warn claims are
separate," with each providing an independent basis for strict
products liability.  LeBlanc v. Am. Honda Motor Co., 141 N.H.
579, 586 (1997).  The question, then, is whether the label's
adequacy can be considered in evaluating a design defect claim
where, as here, the plaintiff's failure-to-warn claim fails for
lack of causation.  Since the parties have not briefed that
issue, the court will not resolve it now.

only "in factual content," but also "in expression of the facts,
or in the method by which it is conveyed." Id. at 8-9 (quoting
Brochu v. Ortho Pharm. Corp., 642 F.2d 652, 657 (1st Cir. 1981)).
On this record, there is a trialworthy question as to whether
Sulindac's label should have warned of SJS/TEN more clearly and
prominently, including in its "Warnings" section. Id. at 11.
Both parties may present evidence on that issue.

Finally, Mutual seeks to preclude any suggestion that the
Sulindac label failed to mention the potential complications of
SJS/TEN (e.g., blindness, coma), arguing that a reasonable doctor
would have known what that disease can entail. This request is
denied for the same reasons discussed in the preceding paragraph.
Mutual is free to present expert testimony regarding what a
reasonable doctor would have known about SJS/TEN, see Bartlett,
2010 DNH 123, at 24-25, and to argue that Sulindac's label was
sufficiently detailed in light of that knowledge, but this court
will not prohibit Bartlett from suggesting that the label should
have been more detailed.


**Motion #16:  Sulindac's relative risk**

Mutual seeks to preclude any suggestion that Sulindac
carries a higher risk of SJS/TEN than other NSAIDs or other
drugs, which it claims cannot be determined from the limited data

14

available.  This motion is denied as moot.  The court already addressed this issue in its recent ruling on the parties' expert motions.  See id. at 35 (rejecting Mutual's request for categorical exclusion of such testimony).  Any objections that Mutual may have to specific testimony in this area will be considered at trial.

**Motion #17:  Bactrim**

Mutual seeks to exclude evidence about Bactrim, another drug manufactured by Mutual that has been linked to SJS/TEN, arguing that such evidence is not relevant and is unfairly prejudicial.  This motion is also denied as moot.  The court addressed this issue, too, in its recent ruling on the parties' expert motions.  See id. at 35-36 (rejecting Mutual's request to categorically exclude testimony about Bactrim by one of Bartlett's experts).[6]  Any objections that Mutual may have to specific Bactrim evidence will be considered at trial.

---

[6]But see note 1, supra (reserving judgment on whether Bartlett has trialworthy claims for negligence or enhanced compensatory damages and, if not, whether she can present evidence of Mutual's alleged fault).

15

**Motion #18:   Subsequent medical literature**

Mutual seeks to preclude any reference to medical literature or FDA advisory committee documents that post-date Bartlett's prescription, arguing that such evidence is not relevant and is unfairly prejudicial.  This motion is granted in part.  Bartlett may not use post-prescription materials to prove notice to Mutual or the FDA, since that is a chronological impossibility.  See Fed. R. Evid. 401, 402.  The evidence may, however, be relevant for other purposes,[7] and even if it constitutes hearsay, see Fed. R. Evid. 801(c), it may be a permissible basis for expert

---

[7]For example, although Bartlett must show "that [Sulindac's] unreasonably dangerous condition existed when the product was purchased," Thibault v. Sears, Roebuck & Co., 118 N.H. 802, 809 (1978), more recent safety information may shed light on the risk-utility analysis, since (based on the record presently before the court) Sulindac's design has not changed in the intervening period, nor have the designs of various alternative drugs, or the available technology.  See, e.g., Brooks v. Beech Aircraft Corp., 902 P.2d 54, 63 (N.M. 1995) (unreasonable dangerousness "may be measured not only by the information available to the manufacturer at the time of design, but also by the information available to the trier of fact at the time of trial," at least in the absence of "unknowable design considerations"); Dart v. Wiebe Mfg., Inc., 709 P.2d 876, 880 (Ariz. 1985) (same).

While this court is aware of the intense scholarly debate over the use of post-purchase information as evidence in strict liability cases based on defective design, see 2 Louis R. Frumer & Melvin I. Friedman, Products Liability § 11.03[4][a], 11-88 to 11-89 (2010), such evidence is less concerning where, as here, the post-purchase information does not stray far afield from the pre-purchase information, either in time or content.  The court notes, however, that limits may be imposed on such evidence at trial to prevent unfair prejudice, undue delay, or waste of time. See Fed. R. Evid. 403.

testimony, <u>see</u> Fed. R. Evid. 703.  This court cannot make those determinations in the abstract, without reference to particular evidence.  The remainder of Mutual's motion is therefore denied without prejudice to any objections that Mutual may raise at trial.

**Motion #19:  Prior medical literature**

Mutual seeks to exclude evidence of an article regarding the link between NSAIDs and SJS/TEN, which it argues is hearsay and unreliable.  <u>See</u> Maja Mockenhaupt <u>et al.</u>, <u>The Risk of SJS and TEN Associated with NSAIDs: A Multinational Perspective</u>, 30 Journal of Rheumatology 2234-2240 (Oct. 2003).  This motion is granted in part.  The article is indeed hearsay "if offered to prove the truth of the matter[s] asserted" therein, <u>see</u> Fed. R. Evid. 801(c), and thus may not be offered for that purpose, except to the extent permitted by the "learned treatise" exception to the hearsay rule, <u>see</u> Fed. R. Evid. 803(18) (allowing limited use of such articles in cross-examination of expert witnesses), should Bartlett lay the appropriate foundation.

The article may, however, be offered to prove notice.[8]  <u>See</u> <u>Kelley</u>, 140 F.3d at 346.  Moreover, Bartlett's experts may

---

[8]<u>But see</u> note 1, <u>supra</u> (reserving judgment on whether Bartlett has trialworthy claims for negligence or enhanced compensatory damages and, if not, whether she can present evidence of Mutual's alleged fault).

testify based on the article, even if it is hearsay, since such
articles are "reasonably relied upon by experts in the particular
field." Fed. R. Evid. 703. The article itself "need not be
admissible in order for the [expert] opinion or inference to be
admitted." Id. Mutual's argument that the article is unreliable
is belied by the fact that it was published in a prominent, peer-
reviewed medical journal and that Mutual's own expert, Dr. Robert
Stern, is one of the report's authors.[9]


**Motion #20:   FDA reporting**

Mutual seeks to exclude evidence that it failed to report to
the FDA information from the medical literature regarding
Sulindac's safety risks, arguing that it had no duty to do so and
that such evidence therefore has no probative value and is
unfairly prejudicial. This motion is denied. As explained in
this court's summary judgment ruling, generic drug manufacturers
are required by FDA regulations to survey the medical literature
for adverse drug events associated with their drugs and to report
such information to the FDA. See Bartlett, 2010 DNH 112, at 30-

---

[9]This court expresses no opinion on whether the recently
discovered draft of the article (see doc. 230-2) is sufficiently
reliable to satisfy Rule 703. Since it was never published, and
there is no indication (in the current record, anyway) that the
FDA or Mutual was or should have been aware of it at the time of
Bartlett's prescription, that draft clearly cannot be admitted to
show notice.

32 (interpreting 21 C.F.R. § 314.80(b)-(c)).  While not
establishing negligence per se, Mutual's failure to comply with
those requirements is relevant evidence of negligence.[10]  See id.
at 35.


## Motion #21:  Patient medication guide

Mutual seeks to preclude any suggestion that it should have
created a patient medication guide for Sulindac.  This motion is
granted.  As explained in this court's summary judgment ruling,
"a manufacturer's duty [under New Hampshire law] to warn of a
drug's safety risks requires that the physician, not the patient,
be warned."  Bartlett, 2010 DNH 112, at 20.  References to a
patient medication guide, because they would imply a duty to warn
the patient, would be confusing to the jury and unfairly
prejudicial to Mutual.  See Fed. R. Evid. 403.


## Motion #22:  Market withdrawal

Mutual seeks to preclude any suggestion that Sulindac should
have been withdrawn from the market, arguing that withdrawal is
not required under New Hampshire law (even for unreasonably

---

[10]But see note 1, supra (reserving judgment on whether
Bartlett has trialworthy claims for negligence or enhanced
compensatory damages and, if not, whether she can present
evidence of Mutual's alleged fault).

dangerous products) and that any such suggestion would be unfairly prejudicial.  But such a suggestion is implicit in every products liability case based on defective design, because the plaintiff must prove that the product's risks outweigh its benefits.  Cf., e.g., Thibault, 118 N.H. at 807 ("a finding of liability for defective design could result in the removal of an entire product line from the market").  Thus, Mutual's claim of unfair prejudice is overstated.

Of course, Bartlett may not introduce evidence of what the law requires (if she even disagrees with Mutual on that point, which is unclear from her objection).  To that extent, this motion is granted.  See Bartlett, 2010 DNH 123, at 29-30; Fed. R. Evid. 403.  Bartlett may, however, introduce evidence of industry practice, including the fact that other drugs linked to SJS/TEN have been withdrawn from the market, which is relevant to whether Sulindac was an unreasonably dangerous product.  See Thibault, 118 N.H. at 814 (allowing evidence of industry practice to be admitted in a defective design case); see also Fed. R. Evid. 401, 402.  To shed light on that evidence, she may also introduce expert testimony comparing Sulindac to those other drugs.  The probative value of such evidence outweighs any prejudice to Mutual.  See Fed. R. Evid. 403.

This court recognizes that there may be some tension between that evidence and what strict products liability requires, which

is that manufacturers compensate consumers for the damage caused
by unreasonably dangerous products, not necessarily that they
remove such products from the market.  See 5 Frumer & Friedman,
supra, § 57.01[4], at 57-9 (noting that "almost all of the
opinions which have addressed the issue have found that there is
no common law duty to recall or retrofit" unreasonably dangerous
products).  Because of that tension, the court will entertain
requests from Mutual for limiting instructions when such evidence
is presented at trial and/or appropriate jury instructions at the
close of the case.


**Motion #24:  Post-traumatic stress disorder**

Mutual seeks to preclude psychologist Richard Goldberg from
testifying that Bartlett had post-traumatic stress disorder,
arguing that a psychologist is not qualified to make such a
diagnosis under New Hampshire law.  But the "question of whether
expert testimony should be admitted or excluded" in a federal
case "is a matter governed by federal, rather than state, law,"
even where the case involves state-law claims.  Clark v.
Heidrick, 150 F.3d 912, 914 (8th Cir. 1998); see also, e.g.,
Forrestal v. Magendantz, 848 F.2d 303, 305 (1st Cir. 1988); 29
Charles Alan Wright et al., Federal Practice and Procedure §
6263, at 202-03 (1997).  Since Mutual invokes only state law and

argues against the application of federal law, its motion is denied.[11]

## Motion #25:  Mutual's finances

Mutual seeks to preclude any reference to its income, net worth, or financial condition, arguing that such evidence is not relevant and is unfairly prejudicial.  In products liability cases, "most states permit the introduction of the defendant's financial condition into evidence in order to help the jury determine the amount of punitive damages necessary to adequately punish the defendant."  2 Frumer & Friedman, supra, § 14.06[4], at 14-84.  But punitive damages are not allowed in New Hampshire. See Stewart v. Bader, 154 N.H. 75, 88 (2006) ("No damages [including enhanced compensatory damages] are to be awarded as punishment to the defendant or as a warning and example to deter him and others from committing like offenses in the future.").  Thus, evidence of Mutual's financial condition is not relevant for that purpose.

Bartlett has not shown that Mutual's financial condition is relevant for any other purpose.  Mutual's motion is therefore granted.  See Fed. R. Evid. 401-403; cf. Sawyer v. Boufford, 113

---

[11]Even under state law, Mutual's argument would be difficult to accept.  See Baxter v. Temple, 157 N.H. 280 (2008) (deeming psychologist's expert testimony reliable and admissible where it included diagnosis of mental disorders).

N.H. 627, 630 (1973) (vacating "an order requiring the defendant
to disclose his financial worth" in a personal injury case
because "his resources are not, and cannot be, an issue in the
litigation").  This ruling is without prejudice, however, to
being revisited should Mutual "open the door" by suggesting that
it would have been too burdensome or costly for it to monitor
Sulindac's safety risks.[12]  See United States v. Fowler, 620 F.
Supp. 2d 229, 233 (D.N.H. 2009) (noting that a party can "open[]
the door to cross-examination on [otherwise inadmissible]
evidence by testifying about the subject on direct") (citing
United States v. Balthazard, 360 F.3d 309, 317 (1st Cir.
2004)).[13]

**Motion #26:  Treating physicians**

Mutual seeks to preclude Bartlett's treating physicians from
offering opinion testimony unless they formed their opinions
during the course of Bartlett's treatment.  This motion is denied

---

[12]But see note 1, supra (reserving judgment on whether
Bartlett has trialworthy claims for negligence or enhanced
compensatory damages and, if not, whether she can present
evidence of Mutual's alleged fault).

[13]Bartlett also argues, in her objection, that she should be
allowed to refer to Mutual's number of employees and its age as a
company.  But Mutual has not moved to exclude such evidence,
which is relevant background information, see Faigin v. Kelly,
184 F.3d 67, 81 (1st Cir. 1999), and is not unfairly prejudicial
to Mutual, see Fed. R. Evid. 403.

as moot.  The court already addressed this issue in its recent ruling on the parties' expert motions.  <u>See</u> <u>Bartlett</u>, 2010 DNH 123, at 36-37; <u>see also</u> doc. 274 (applying that ruling in assessing the admissibility of deposition testimony by one of the physicians).


**Motion #27:  Liability insurance**

Mutual seeks to preclude any reference to its insurance coverage.  Since Bartlett has no objection to this motion, it is granted.  <u>See</u> Fed. R. Evid. 411; <u>Adams v. J. Meyers Builders, Inc.</u>, 671 F. Supp. 2d 262, 275 (D.N.H. 2009).


**Motion #28:  Litigation history**

Mutual seeks to preclude any reference to certain motions it has filed in this case and their outcomes.  Since Bartlett has no objection to this motion, it is granted.  <u>See</u> Fed. R. Evid. 401-403; <u>Bartlett</u>, 2010 DNH 125, at 9 (granting similar motion in limine filed by Bartlett).


**Motion #29:  Deposition testimony**

Mutual seeks to preclude the use of deposition testimony in lieu of live testimony, unless this court has deemed the deponent/witness "unavailable" for trial under Fed. R. Civ. P.

24

32(a)(4).  <u>See</u> doc. 274 (deeming four of Bartlett's potential witnesses unavailable).  Since Bartlett has not objected to this motion, it is granted.


**<u>Motion #30:  "Golden rule" argument</u>**

Mutual seeks to preclude Bartlett from making a so-called "golden rule" argument, which invites the jury to put itself in the plaintiff's position.  Since Bartlett has not objected to this motion, it is granted.  <u>See</u> <u>Forrestal</u>, 848 F.2d at 309 (noting that such argument is "improper" and "universally condemned").


**<u>Motion #31:  Witness sequestration</u>**

Mutual requests that witnesses be sequestered from the courtroom and prohibited from discussing the case with other witnesses during the trial.  <u>See</u> Fed. R. Evid. 615; <u>United States v. Magana</u>, 127 F.3d 1, 5 (1st Cir. 1997) (noting that, in addition to sequestration, the court has discretion to "order that witnesses not converse with each other about the case").  This motion is granted without objection as to fact witnesses, including Bartlett's treating physicians, but not including Bartlett herself and Mutual's designated representative, who are

exempted from sequestration by rule.  See Fed. R. Evid. 615(1)-(2).

Bartlett argues that expert witnesses should also be exempted from sequestration because their "presence is . . . essential to the presentation of the party's cause."  Fed. R. Evid. 615(3); see also id., advisory committee notes (1972) (stating that "essential" witnesses include "an expert needed to advise counsel in the management of the litigation").  Mutual has not argued otherwise.  Since expert testimony is indeed essential to the parties' respective presentations, and since there is "little if any reason to sequester a witness who is to testify in an expert capacity only and not to the facts of the case,"[14] United States v. Lussier, 929 F.2d 25, 30 (1st Cir. 1991) (quoting Morvant v. Constr. Aggregates Corp., 570 F.2d 626, 629-30 (6th Cir. 1978)), the court exempts expert witnesses from its sequestration order.

---

[14]Indeed, Rule 703 expressly contemplates the presence of expert witnesses at trial, stating that an expert's opinions may be based on "facts or data . . . perceived by or made known to the expert at or before the hearing."  See Fed. R. Evid. 703 (emphasis added).

**Conclusion**

As set forth above, Mutual's motions in limine[15] are granted in part and denied in part.

      **SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated:  August 2, 2010

cc:  Keith M. Jensen, Esq.
     Bryan Ballew, Esq.
     Patrick J. O'Neal, Esq.
     Eric Roberson, Esq.
     Christine M. Craig, Esq.
     Timothy P. Beaupre, Esq.
     Joseph P. Thomas, Esq.
     Paul J. Cosgrove, Esq.
     Jeffrey D. Geoppinger, Esq.
     Linda E. Maichl, Esq.
     Stephen J. Judge, Esq.

---

[15]Document no. 205.